UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RUSSELL TINSLEY, | Civil Action No. 15-7319(MCA) |
| Plaintiff, | |
| v. | OPINION |
| MERRILL MAIN, PH.D., STU CLINICAL DIRECTOR, et al., | |
| Defendants. | |

**ARLEO, United States District Judge:**

## I. INTRODUCTION

Plaintiff Russell Tinsley is confined at the Special Treatment Unit ("STU") in Avenel, New Jersey, as an involuntarily civilly committed sexually violent predator ("SVP") under New Jersey's Sexually Violent Predator Act ("SVPA"). He has filed a Complaint pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights arising from his confinement at the STU. Defendants Merrill Main, Ph.D., Shantay Adams, R. Van Pelt, J. Ottino, Lashonda Burley, Psy.D., and Christopher Beaumount, Ph.D., employees of the New Jersey Department of Human Services (the "DHS Defendants"), have moved to dismiss the Complaint against them pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for relief. For the reasons explained in this Opinion, the Court will deny the motion to dismiss with respect to as to the First Amendment retaliation claims, as construed by the Court in this Opinion, against DHS Defendants Beaumount, Main, and Van Pelt. Plaintiff's remaining claims are dismissed as to all Defendants.

1

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### a. Factual Allegations

Plaintiff's Complaint, which is styled as a "class action," provides a confusing and circuitous account of incidents that have allegedly occurred since his civil commitment at the STU on May 12, 2010.[1] From his Complaint, the Court gleans the following salient facts regarding the individuals who are named as Defendants in the Complaint.[2]

Plaintiff alleges that since his civil commitment in 2010, he "has participated in Process Groups 12 and 14, on the most restricted Unit of the South Main Facility[.]" (ECF No. 1, Compl. at ¶ 13.) He alleges that he has made "steady and consistent progress" during his placement at the STU and was "promoted to phase 2 on 2/11/14[.]" (Id. at ¶ 16.) On or about September 9, 2014, Plaintiff filed "a complaint" against the STU's Process Group 14

---

[1] Plaintiff appealed his commitment to the Superior Court of New Jersey, Appellate Division, which affirmed his commitment in an unpublished decision. *See* In re Civil Commitment of R.T., No. A-2521-13T2, 2016 WL 674215, at *7 (N.J. Super. Ct. App. Div. Feb. 19, 2016). The New Jersey Supreme Court subsequently denied his petition for certification. 226 N.J. 213 (2016). Petitioner has filed a habeas petition challenging his civil commitment, which is currently before this Court.

[2] Plaintiff's Complaint includes allegations against individuals who are not identified as Defendants in the caption or elsewhere in the Complaint. Plaintiff alleges that an individual named Ms. Kearney denied him access to the "law room" for "legal defense activities." (Id. at ¶ 56.) Plaintiff complained to a Mr. Johnson, who told him to fill out a request for access. (Id.) After five months, Plaintiff was scheduled to the use the law room, but Ms. Kearney allegedly denied his request and, Plaintiff was placed on MAP. (Id.) Plaintiff further alleges that Officers Ware and Hyatt "threatened [Plaintiff's] physical well being and refused to allow [Plaintiff] access to the Law Library in retaliation for grievances filed against them." (Id.) Plaintiff also alleges that he has been threatened by unidentified staff members, placed on discriminatory MAP placements for the filing of complaints and lawsuits, and was assaulted by a resident, allegedly at the request of an unidentified therapist who had allowed the resident to threaten Plaintiff on previous occasions.[2] (Id. at ¶¶ 31-33.) Later in his Complaint, he alleges that he has been "unfairly placed on MAP for filing *pro se* legal papers, and having access to the STU facility law library." (Id. at ¶ 46.) To the extent Plaintiff seeks to bring claims for these incidents, he must do so by way of an Amended Complaint. The Court also notes that some of the incidents may have occurred shortly after Plaintiff was confined to the STU in 2010. Such claims would likely be time barred under the two-year statute of limitations for civil rights claims.

2

Psychologists, who are identified in the Complaint as Defendants Beaumount and Burley. (*Id.* at 8-9.) Plaintiff alleges specifically in the Complaint that Defendant Beaumount ignored his successful completion of certain treatment modules and recommended that he repeat the modules rather than advancing him to the next stage of treatment. (*Id.* at ¶ 17.) Plaintiff further alleges that Defendant Beaumount and the "other therapist" [sic] are ignoring his successful completion of the modules in retaliation for the "many complaints" that Plaintiff has filed.³ (*Id.*; *see also* ¶ 19; *see also* Compl. at ¶¶ 48-53.) Later in the Complaint, Plaintiff alleges that he has filed 34 grievances regarding alleged inadequate treatment and related matters. (*Id.* at ¶ 52.) He has attached to his Complaint copies of numerous grievances about his treatment and other complaints, many of which are illegible. (*Id.* at ¶ 38; *see also* ECF No. 1-3 at Exhibit C.) Plaintiff also reiterates his allegations that, despite his diligent participation in treatment and his successful completion of treatment modules, his requests for advancement have been denied. (*Id.* at ¶¶ 48-52.) Plaintiff also alleges that he has requested additional treatment modules, and these requests have been denied.⁴ (*Id.* at ¶ 50.)

---

³ Later in the Complaint, Plaintiff identifies Defendants Beaumount, Main, Adams, Van Pelt, Ottino, and Burley as Defendants who allegedly ignored his successful completion of certain therapy modules. (*Id.* at ¶ 53.) He does not provide additional facts to support this allegation.

⁴ In the section of Plaintiff's Complaint, entitled "Other Deprivations of Mr. Tinsley's Liberties and Retaliatory Conduct Against Him by the Staff at DOC and STU," he alleges that he "has made it known to his treatment team, psychologists, attorneys, the civil commitment court and the DOC and STU prison officials and therapists alike" that he is not dangerous or suffering from a mental abnormality or personality disorder, and is not likely to engage in acts of sexual violence if released. He alleges that he has supported his allegations with a professional expert evaluation, and has attached to his Complaint a Confidential Expert Report "for the Court's consideration[.]" (*Id.* at ¶ 36.) It appears that Plaintiff seeks to be released from the STU and sent to Philadelphia for outpatient sex offender treatment. (*Id.* at ¶¶ 36-37; *see also* ¶ 60.)

Plaintiff alleges that Defendant Merrill Main, identified in the Complaint as the Clinical Director of the STU (*id.* at ¶ 3), responded to one of Plaintiff's complaints as follows:

> In my response to Merrill Main, Ph.D. STU Clinical Director's answer to my complaint, and after speaking to him after the scheduling, Thursday, October 11, 2014 Community Meeting recently. Please be advised that the Deprivations of Mr. Tinsley's Liberties and Retaliatory Conduct Against him by Merrill Main, Staff at STU and DHS; or DOC will continue to exist, from evidence of his own statements to him "No matter how much treatment you make progress in, because of your complaints, it would only hurt any and all chances for you to ever get discharge and that you will never get off the South Restricted Unit" prove his discriminating against Mr. Tinsley and by his treatment professionals at STU's sex offender program had "departed so substantially from professional minimal standards as to demonstrate that their decisions and practices were not. . . based on their professional judgment.

(ECF No. 1, Compl. at ¶ 40.) Plaintiff further alleges that Defendant Main told Plaintiff

> It made no different [sic] since [Plaintiff's] commitment last December, [that Plaintiff has] been participating and engaging in sex offender specific treatment. But by [Plaintiff] making complaints, and filing lawsuits, that will only stop any and all advancement to the next treatment phase, keeping [Plaintiff] in the South Restricted Area, as [Plaintiff] continue to make complaint to threaten and intimidate staff, that will only make it impossible for [Plaintiff] to be released from civil commitment.

(*Id.* at ¶ 45.)

Plaintiff Complaint further alleges that on September 22, 2015, Plaintiff was "denied access to published [sic] his book entitled 'Civilly Committed.'" (*Id.* at ¶ 61.) After the book's publication, Plaintiff was allegedly placed on MAP status by Defendant Van Pelt, who is identified in the Complaint as the STU Program Coordinator. (*Id.* at ¶¶ 6, 61.) Plaintiff has attached to his Complaint a memo allegedly written by Defendant Van Pelt, which is dated September 22, 2015, and which states in relevant part:

> Resident Tinsley's pattern of poor judgment has reached the point at which its consequences compel DHS to intervene. His

4

> recent publication, available to the general public for purchase, specifies the name of one of his victims, who was a minor at the time of the offense. Such an action by Mr. Tinsley does not only demonstrate poor judgment, it's reflective of dismal treatment progress. Furthermore, Mr. Tinsley continues to promote his website that, by its very name, glorifies pimping which many would define as very much part of 'rape mentality.'
>
> Mr. Tinsley will be placed on Program MAP effective immediately. He is strongly recommended to pull his 'book' from publication to prevent further harm to his victims. His poor judgment, how it relates to treatment participation and progress, will be addressed while on Program MAP. As such, Mr. Tinsley's job will be suspended. Although Mr. Tinsley will not be prohibited from publishing or sending anything that can legally be published or sent, his restrictions will also include him having to process future correspondence and publications, written, music, and otherwise, with his therapists, particularly those to official entities, but excluding legal correspondence. His Treatment Team looks forward to the opportunity to assist Mr. Tinsley in exercising better judgment regarding such matters.

(ECF No. 1-6, Ex. at page 4.) Plaintiff alleges that he subsequently sought to "process his thoughts about the matter in his process Group, but was denied to do so by his two therapists", identified as Defendants Burley and Beaumount. (*Id.* at ¶ 63.) Plaintiff includes in his Complaint his own writing entitled "Behavioral Cycle" in which he appears to disagree with Defendant Van Pelt's assessment of his book and the nature of the website promoting it. (*Id.* at ¶ 63.) In this writing, Plaintiff states that a purpose of his book is to educate the public about issues related to civil commitment.[5] (*Id.*)

In the section of his Complaint entitled "The DOC and STU Facilities," Plaintiff alleges generally that the DOC and STU receive more inmates than they are capable of housing and

---

[5] Plaintiff also includes in his Complaint what appears to be a memo allegedly written by an individual named Irene Lo, who is described in the Complaint as Plaintiff's "fan[] and supporter[.]" (*Id.* at ¶ 62.) Plaintiff has also submitted letters allegedly on Ms. Lo's behalf to the Court. Plaintiff would be better served by submitting his own factual account of his treatment at the STU rather than Ms. Lo's memos or letters summarizing that treatment, which are confusing and have little if any relevance to the issues before the Court.

5

treating, and that the facility houses inmates that no longer pose a danger to others. (*Id.* at ¶ 22.) He appears to allege that the psychologists are poorly qualified. (*Id.* at ¶ 23.) The Complaint makes the following general statement about the conditions of confinement at the STU:

> As a result of their housing of civil detainees for treatment in a prison that was designed and built for punishment -lacking in space and privacy and under the watch of the DOC, an organization that is focused on punishment through fear, violence and terror in a most repressive manner. That clearly is not just counterproductive and anti therapeutic but harmful, to say the least.

(*Id.* at ¶ 25.) He further alleges that

> As a result of understaffing, inmates in DOC and STU, especially on the most restricted Unit, of the South Main Facility for punishment of STU's residents and where they are being denied adequate treatment; or most important modules, which are groups that teach therapy concepts in an educational setting, they are frequently subjected to lockdown conditions where they are forced to remain in their cells for 13-18 hours per day and are denied access to fundamentals such as phone calls and showers.

(*Id.* at ¶ 26.) It is not clear if Plaintiff has been subjected to any of these alleged conditions.

Plaintiff's Complaint includes four counts for relief. The first count alleges violations of his Fourteenth Amendment rights to adequate treatment. The second count alleges violations of his First Amendment rights in connection with the publication of his book. The third count alleges a § 1983 claim for retaliation. The fourth count alleges cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. (ECF No. 1, Compl. at 22-27.)

### b. Procedural History

Plaintiff's Complaint and application to proceed in forma pauperis ("IFP") were docketed on October 6, 2015. (ECF No. 1.) The Court denied his IFP application without prejudice, and Plaintiff subsequently paid the filing fee. (ECF No. 3.) Summons issued, and, on March 10, 2016, Defendants Main, Adams, Van Pelt, Ottino, Burley, and Beaumount (the "DHS Defendants") filed a motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF

Nos. 13, 15, 20.) On March 29, 2016, the State filed what appears to be a brief without a supporting notice of motion on behalf of Defendant Sherry Yates (ECF No. 26); the submission was initially docketed as a motion but subsequently terminated by the Clerk's Office. The State did not refile the motion after it was terminated.[6] Plaintiff filed numerous responses in opposition to Defendants' motions. (ECF Nos. 23, 28, 30, 31.) On March 24, 2016, the DHS Defendants filed their reply in support of their motion to dismiss. (ECF No. 25.)

### III. STANDARD OF REVIEW

The DHS Defendants have moved to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6), which provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a motion to dismiss for failure to state a claim, the moving party "bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)); *United Van Lines, LLC v. Lohr Printing, Inc.*, No. CIV. 11–4761, 2012 WL 1072248, at *2 (D.N.J. Mar. 29, 2012).

In considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In ruling on a motion to dismiss, Courts are required to liberally construe pleadings

---

[6] Because that motion has been terminated, the Court does not consider it at this time. Defendant Yates is free to refile the motion to dismiss with the required notice of motion.

7

drafted by *pro se* parties. *See Tucker v. Hewlett Packard, Inc.*, No. 14-4699 (RBK/KMW), 2015 WL 6560645, at *2 (D.N.J. Oct. 29, 2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Such pleadings are "held to less strict standards than formal pleadings drafted by lawyers." *Id.* Nevertheless, pro se litigants must still allege facts, which if taken as true, will suggest the required elements of any claim that is asserted. *Id.* (citing *Mala v. Crown Bay Marina*, Inc., 704 F.3d 239, 245 (3d Cir. 2013)). To do so, [a plaintiff] must plead enough facts, accepted as true, to plausibly suggest entitlement to relief." *Gibney v. Fitzgibbon*, 547 F. App'x 111, 113 (3d Cir. 2013) (citing *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012)). Liberal construction also does not require the Court to credit a *pro se* plaintiff's "bald assertions" or "legal conclusions." *Id.* (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). That is, "[e]ven a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief. *Id.* (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

IV. **ANALYSIS**

By way of background, Plaintiff is confined at the STU pursuant to the New Jersey SVPA, N.J.S.A. 30:4–27.24 et seq., which provides for the custody, care and treatment of involuntarily committed persons who are deemed to be sexually violent predators ("SVP"). An SVP is defined as a person who has been convicted of at least one sexually violent offense and who suffers from "a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined to a secure facility for control, care and treatment." *Id.* Once committed to the STU, an SVP remains there until such time as a state court finds that he "will not be likely to engage in acts of sexual violence," in which case he may be "conditionally discharged." N.J.S.A. 30:4–27.32(c)(1). As explained by another Court in this

District, "[i]n order to be "conditionally discharged," the individual must establish that he has been successfully treated for the mental abnormality or personality disorder that was the basis for his confinement to the STU. In order for residents to have a meaningful opportunity to work toward a potential release, the Act provides that class members receive mental health treatment, which is provided by the New Jersey Department of Human Services." *Alves v. Main*, No. CIV.A. 01-789 DMC, 2012 WL 6043272, at *1–2 (D.N.J. Dec. 4, 2012) (citing N.J.S.A. 30:4–27.34(b)), aff'd, 559 F. App'x 151 (3d Cir. 2014).

Although Plaintiff's Complaint is exceedingly difficult to follow, the gravamen of the Complaint appears to be that certain of the DHS Defendants are refusing to advance him to the next stage of treatment in retaliation for his filing of grievances about the alleged inadequacy of his treatment and have placed him on MAP status because he published a book about his civil commitment.[7]

---

[7] Plaintiff, who is proceeding *pro se* and opposes the motion to dismiss, asks the Court to consider facts and documents that are not properly considered on a motion to dismiss. In his opposition to Defendants' motions to dismiss, Plaintiff states that he

> relies upon his initial Complaint, Motion for a Temporary Restraining Order, Preliminary Injunction, Memorandum of Law in Support of Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, and on his Motion for Reconsideration, as well as Letters from Russell Tinsley and Ms. Irene Lo in support of case; and/or all Attachments, Declaration of Russell Tinsley, his Text of Proposed Order and Book received from Russell Tinsley and forwarded to Chambers on 11/12/2015 for explication of the issues involved.

(ECF No. 23, Pl. Opp. Br. at 1-2.) "[I]t is axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." *See Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984). As such, the Court considers only the Complaint and the relevant attachments to the Complaint in ruling on the motion to dismiss.

In their motion to dismiss, the DHS Defendants focus on allegations contained in the specific counts of the Complaint.[8] They construe Plaintiff's complaint to allege the following: 1) that Plaintiff's civil commitment is unlawful; 2) that he has been denied free speech through publishing a book regarding his civil commitment; 3) that aspects of his civil commitment are retaliatory; and 4) that his civil commitment constitutes cruel and unusual punishment. (ECF No. 20-1, Mov. Br. at 1.) They make three arguments in favor of dismissal. The DHS Defendants first argue that Plaintiff's first and fourth counts are contrary to clearly established law. (*Id.*, Mov. Br. at 9-12.) They next argue that Plaintiff's second and third counts are

---

[8] In this regard, the Court notes that the DHS Defendants' "Statement of Facts" does not set forth the allegations in Plaintiff's twenty-nine page Complaint and instead provides the following characterization of Plaintiff's conduct in the STU:

> Throughout his commitment at the STU, Plaintiff has demonstrated severe oppositional behavior, including refusing to participate in sex-offender-specific treatment, ordering contraband to be delivered to the STU, maintaining a website identified as "pimpinentertainment .net," and publishing a book which contains the un-redacted names of his victims, including minors (*See* Compl. Ex. C; Compl. at [¶¶] 39, 46, 61-63). Due to his frequent institutional infractions and violations of STU policies, Plaintiff has been placed on Modified Activities Placement ("MAP") on multiple occasions. *Ibid.* The DHS Defendants deny that any of Plaintiff's MAP placements were in any way retaliatory, unjustified, or inappropriate.

The Court, however, may not consider a defendant's version of the facts at the motion-to-dismiss stage. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir.1994) ("In determining whether a claim should be dismissed under Rule 12(b)(6), a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record."). Although the DHS Defendants cite to the Complaint in its factual recitation, it is clear from the context of the Complaint that Plaintiff disputes the their characterization of his conduct in the STU, and the Court is required at the motion-to-dismiss stage to resolve such contradictions in favor of Plaintiff. As such, the Court does not give any weight to the DHS's "Statement of Facts" in ruling on the instant motion to dismiss, but will, where possible, address the arguments made by the DHS Defendants.

contrary to fact. (*Id.*, Mov. Br. at 13.) Finally, they argue that all counts for relief are premised on sweeping legal conclusions and lack sufficient factual support. (*Id.*, Mov. Br. at 15-16).

### a. Plaintiff's Allegations Regarding the Conditions of his Confinement

The DHS Defendants construe count one of Plaintiff's Complaint as a challenge the lawfulness of his civil commitment under the SVPA and argue that this claim is foreclosed by *Kansas v. Hendricks*, 521 U.S. 346 (1997). (ECF No. 20-1, Mov. Br. at 9-12.) In *Hendricks*, the Supreme Court of the United States examined the conditions of confinement mandated by Kansas' Sexually Violent Predator Act ("Kansas Act"), a legislation substantively indistinguishable from the SVPA. The Kansas Act called for confinement of sexually violent predators in secure facilities that could be, regime—and conditions-wise, analogized to a correctional facility. *See id.*, 521 U.S. at 363–64. The Court concluded that housing of civilly committed individuals at the segregated prison-like unit was not a violation of these individuals' constitutional rights, since the conditions within the unit were essentially the same as those existing in mental hospitals for involuntarily committed persons (and since the residents of the segregated unit were receiving mental treatment under the language of the Kansas Act). *See id.*, 521 U.S. at 363, 364, 365–368. Consequently, the Court held that involuntary confinement under the Kansas Act was not unconstitutional with regard to civilly committed individuals confined within prison grounds, so long as such civilly committed individuals were: (a) segregated from the general prison population; and (b) afforded a treatment comparable to that provided to other civilly committed persons confined in treatment units. *Id.*, 521 U.S. at 368–69; *see also Seling v. Young*, 531 U.S. 250, 261-62 (2001) (revisiting the same issue in detail upon examination of the State of Washington's version of the SVPA and, in addition, holding that placement of civilly committed individuals in a unit located within prison grounds and having prison-like

administrative regime did not violate the Double Jeopardy Clause); *Roberts v. Velez*, No. CIV.A. 11-1198 SDW, 2011 WL 2745939, at *4 (D.N.J. July 12, 2011) (explaining same).

Plaintiff's Complaint alleges that civil detainees are housed for treatment "in a prison that was designed and built for punishment." (ECF No. 1, Compl. at ¶ 25.) To the extent Plaintiff's Complaint attempts to allege that his confinement in a segregated unit within the prison facility is unconstitutional, that claim is dismissed as barred by *Hendricks*.[9] *See, e.g., Graham v. Sharp*, No. CIV.A. 10-5563 SRC, 2011 WL 2491347, at *7 (D.N.J. June 20, 2011) (dismissing with prejudice Plaintiff's claim that his continued confinement in a segregated unit within a prison facility is unconstitutional.)

In Count Four of the Complaint, Plaintiff also alleges that Defendants have subjected him to cruel and unusual punishment under the Eighth and Fourteenth Amendments "by subjecting Mr. Tinsley to inhumane and unsafe living conditions at DOC and STU which threaten his liberty and safety without due process of law." (ECF No. 1, Compl. at ¶¶ 76-78.) The state has a duty to provide civilly committed persons with adequate food, shelter, clothing, medical care, and safety measures. *See Grohs v. Yatauro*, 984 F. Supp. 2d 273, 283 (D.N.J. 2013). Plaintiff, however, fails to set forth sufficient facts in his Complaint to state a conditions of confinement claim against any of the DHS Defendants. His generalized allegations about understaffing, lockdowns, and the denial of phone calls and showers are too vague and conclusory to state a claim for relief, and it is not clear if he has been subjected to any of these conditions, and at what frequency. As such, the conditions of confinement claim is dismissed without prejudice as to all DHS Defendants.

b. **Plaintiff's Allegations Regarding Inadequate Treatment**

---

[9] The Court addressed Plaintiff's claim of inadequate treatment below.

As the DHS acknowledge in passing, Plaintiff's Complaint also alleges that he is being "denied 'adequate treatment to be discharged.'" [10] (*See id.*, Mov. Br. at 12-13.) The DHS Defendants do not provide the relevant Third Circuit law for stating Fourteenth Amendment claim for inadequate treatment, but contend that Plaintiff has not "provided specific factual allegations to support such a claim[.]" (ECF No. 20-1, Mov. Br. at 12-13.)

In this regard, the Supreme Court has established that there exists a constitutionally protected right of mentally retarded persons confined at a state institution to minimally adequate treatment. *See Youngberg v. Romeo*, 457 U.S. 302, 316, 319, 322 (1982). In *Leamer v. Fauver*, 288 F.3d 532 (3d Cir. 2002), the Third Circuit held that, since the New Jersey's statutory scheme for sex offenders was predicated on the inmate's response to treatment, that statutory regime created a fundamental due process liberty interest in treatment. *Id.* at 545; accord *Hendricks*, 521 U.S. at 368–69 (inmates housed in prison-like conditions must be afforded a treatment comparable to that provided to other civilly committed persons confined in treatment units). Thus, under Third Circuit law, Plaintiff has a substantive due process right in a treatment facilitating his release prospects. *See Roberts v. Velez*, No. CIV.A. 11-1198 SDW, 2011 WL 2745939, at *8 (D.N.J. July 12, 2011); *Miller v. Christie*, No. CIV.A. 10-2397 KSH, 2011 WL 941328, at *7 (D.N.J. Mar. 11, 2011) (finding that the Third Circuit's holding in *Leamer* extends to an involuntarily committed sex offender under New Jersey's SVPA). Under this standard,

---

[10] As explained in this section, claims of inadequate treatment, where adequately pleaded, are cognizable under § 1983. To the extent Plaintiff seeks to challenge the lawfulness of his confinement as an SVP or seeks a speedier release from that confinement, he must do so by way of a habeas petition and not through a civil suit under § 1983. *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) (State prisoners "must use habeas corpus (or similar state) remedies when they seek to invalidate the duration of their confinement – either directly through an injunction compelling speedier release or indirectly through a judicial determination that necessarily implies the unlawfulness of the State's custody.").

however, the DHS Defendants' actions in denying Plaintiff his statutory right to treatment will be found unconstitutional under the Fourteenth Amendment only if they are so arbitrary or egregious as to shock the conscience. *See Wolfe v. Christie*, No. CIV.A. 10-2083 PGS, 2010 WL 2925145, at *14 (D.N.J. July 19, 2010) (citing *Leamer*, 288 F.3d at 546–47 (substantive due process claim alleging inadequate treatment for committed sex offender "must focus on the challenged abuse of power by officials in denying [the plaintiff] the treatment regimen that was statutorily mandated and was necessary in order for his condition to improve, and thus for him to advance toward release").

Here, although Plaintiff has alleged a Fourteenth Amendment due process claim for inadequate treatment, the gravamen of his claims appears to be that certain of the DHS Defendants are refusing to advance him to the next stage of treatment in retaliation for his filing of grievances regarding the alleged inadequacy of his treatment, and have placed him on MAP status for his publication of a book about his civil commitment. With respect to the alleged inadequacy of his treatment, Plaintiff does not deny that he is receiving treatment at the STU; rather, he alleges that he has been denied unspecified treatment modules that he requested, has been required to repeat treatment modules on at least one occasion, and has been unfairly placed on MAP status. Plaintiff has not provided sufficient facts to allow the Court to determine whether his treatment opportunities were so inadequate as to violate due process. *See, e.g., Williamson v. Davis*, No. 14CV5770 SRC, 2015 WL 2412197, at *5 (D.N.J. May 19, 2015) (explaining that Plaintiff had not alleged sufficient facts to allow the Court to determine whether the security policies of the D.O.C. render treatment opportunities so inadequate as to violate due process). As such, the Court will dismiss without prejudice his Fourteenth Amendment due process claims for inadequate treatment as to the DHS Defendants, and will next address whether

Plaintiff has alleged sufficient facts to state a claim for First Amendment retaliation against any of the DHS Defendants.

### c. First Amendment Claims

Retaliation against a prisoner[11] based on his exercise of a constitutional right violates the First Amendment. *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir.2012) (citing *Mitchell v. Horn*, 318 F.3d 523, 529–31 (3d Cir. 2003); *Rauser v. Horn*, 241 F.3d 330, 333–34 (3d Cir. 2001); *Allah v. Seiverling*, 229 F.3d 220, 224–26 (3d Cir. 2000). To prevail on a retaliation claim, plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights"; and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. *Rauser*, 241 F.3d at 333 (quoting *Allah*, 229 F.3d at 225); *see also Tinsley v. Giorla*, 369 F. App'x 378, 381 (3d Cir. 2010). Temporal proximity between the exercise of a constitutionally protected right and the adverse action may support an inference of causation. *Id.* at 334.

The DHS Defendants contend that "Plaintiff has failed to set forth <u>any facts</u> supporting his claim of retaliatory conduct." (ECF No. 20-1, Mov. Br. at 1.) However, Plaintiff Complaint alleges, albeit confusingly, that the Defendant Beaumount, a Process Group 14 Psychologist, has refused to advance him to the next stage in treatment in retaliation for his filing of grievances about alleged inadequacies in his treatment. (ECF No. 1, Compl. at ¶¶ 9, 17.) The filing of a grievance is constitutionally protected conduct. *See Robinson v. Taylor*, 204 F. App'x 155, 157

---

[11] The Court sees no reason to treat a civilly committed SVP differently than a prisoner in analyzing a First Amendment retaliation claim. *See, e.g., Thomas v. Kaminski*, No. 14CV3719 SRC, 2015 WL 2183979, at *4 (D.N.J. Apr. 15, 2015) (explaining same).

(3d Cir. 2006) (citing *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) and *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003)). Plaintiff has attached to his Complaint a number of grievances filed by him during the relevant period. Although many of the grievances are illegible, several legible grievances appear to involve complaints about Defendant Beaumount, and appear to have been submitted in the months before this Defendant allegedly declined to progress him to the next stage of treatment. (ECF No. 1-5, at pages 28-30.) The Court therefore declines to dismiss the First Amendment retaliation claims against Defendant Beaumount at this time.

Plaintiff further alleges that Defendant Main informed Plaintiff that he would not advance in treatment or be discharged from the STU if he continued to file complaints and lawsuits. (*Id.* at ¶¶ 40, 45.) Assuming the truth of these allegations for purposes of this motion, the Court also declines to dismiss the First Amendment retaliation claims against Defendant Main at this early stage.

Plaintiff also alleges that the DHS Defendants violated his First Amendment rights by "withholding [p]ublishing" of his book, entitled "Civilly Committed." (*Id.* at ¶ 70). As noted by the DHS Defendants, Plaintiff has mailed a copy of the book to the Court, and the book appears to be available for sale. As such, the Court will dismiss without prejudice Plaintiff's First Amendment claim premised on "withholding" the publication of the book.

Plaintiff, however, also alleges that he was placed on MAP status by Defendant Van Pelt for publishing the book, and Defendants have not addressed whether this allegation states a claim for First Amendment retaliation.[12] In the absence of any argument by Defendants, the Court

---

[12] As explained by the Third Circuit, "MAP is a component of the clinical treatment program at the STU that focuses on stabilizing the disruptive behavior of uncooperative residents. Residents who are placed in MAP have fewer privileges than their fellow committees

16

assumes without deciding that Plaintiff's publication of the book "Civilly Committed" constitutes constitutionally protected activity, and that his placement on MAP status by Defendant Van Pelt would be sufficient to deter him from exercising his constitutional rights. The alleged memo from Defendant Van Pelt attached to Plaintiff's Complaint also suggests, at this early stage of the proceedings, that the publication of the book was a substantial factor in Defendant Van Pelt's decision to place Plaintiff on MAP status. As such, the Court declines to dismiss the First Amendment retaliation claim against Defendant Van Pelt at this time.

The Court finds, however, that Plaintiff has not pleaded sufficient facts to suggest that any of the remaining DHS Defendants retaliated against him for his filing of grievances or for publishing a book about his civil commitment. The Court will dismiss without prejudice the First Amendment retaliation claims against the remaining DHS Defendants at this time.

V. **CONCLUSION**

The motion to dismiss is denied as to the First Amendment retaliation claims against Defendants' Beaumount, Main, and Van Pelt, as described by the Court in this Opinion. The Complaint is otherwise dismissed for the reasons stated in this Opinion as to all claims and moving Defendants.[13]

---

at STU—visiting hours are restricted, random cell searches are conducted more often, contact with other residents is greatly diminished, and their unescorted movement is limited." *Marcum v. Harris*, 328 F. App'x 792, 794 (3d Cir. 2009) (citing *M.X.L. v. N.J. Dep't of Human Servs.*, 379 N.J.Super. 37, 876 A.2d 869, 873–74 (2005)). An essential element of the program is an exploration of "the behavior that resulted in MAP placement" through discussion in group therapy. *Id.* at 874.

[13] To the extent he can cure the deficiencies noted in this Opinion, Plaintiff may submit an amended complaint within 30 days with respect to those claims that the Court has dismissed without prejudice. As noted above, Plaintiff's current Complaint is confusing and difficult to construe. If Plaintiff chooses to submit an amended complaint with respect to the claims that have been dismissed without prejudice, his submission must comply with the pleading requirements of Fed. R. Civ. P. 8(a). Rule 8(a) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," and each averment must be

_____
Madeline Cox Arleo, U.S.D.J.

Date: ___Dec 5___, 2016

---

"concise, and direct," *Scibelli v. Lebanon Cty.*, 219 F. App'x 221, 222 (3d Cir. 2007) (citing Fed. R. Civ. P. 8(e)(1)). A district court may *sua sponte* dismiss a complaint for failure to comply with Rule 8. *See Ruther v. State Kentucky Officers*, 556 F. App'x 91, 92 (3d Cir. 2014) (finding dismissal appropriate in cases where the "complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised.") (citing *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir.1995)). In particular, Plaintiff should not include any writings from third parties, *i.e.*, Irene Lo, in his Complaint and should confine himself to the facts that form the basis for his claims for relief.