UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| RUSSELL TINSLEY, | Civil Action No. 15-7319(MCA) |
|---|---|
| Plaintiff, | |
| v. | OPINION |
| MERRILL MAIN, PH.D., STU CLINICAL DIRECTOR, et al., | |
| Defendants. | |

I. **INTRODUCTION**

This matter having been opened to the Court by two separate motions for summary judgment. The first motion for summary judgment is brought by Defendants Merrill Main, Ph.D., R. Van Pelt, and Christopher Beaumount, Ph.D. ("the DHS Defendants") (ECF No. 137), and purportedly seeks summary judgment on Plaintiff's First Amendment retaliation claims <u>as to all DHS Defendants</u>. The DHS Defendants' motion, however, squarely addresses only the retaliation claims arising from Plaintiff's publication of a book and his promotion of a website, which are pending against Defendant Van Pelt.[1] The second motion for summary judgment is brought by Defendant Sherry Yates and seeks summary judgment and dismissal of the Complaint against her. (ECF No. 170.) For the reasons explained in this Opinion, the Court will grant summary judgment as to Defendants Van Pelt and Yates. Because the DHS Defendants have not properly moved for summary judgment on Plaintiff's First Amendment retaliation claims against Main and Beaumount in connection with Plaintiff's filing of grievances, the Court does not consider these claims in the instant motion. Because summary judgment may be

---

[1] Plaintiff's alleges that DHS Defendants Main and Beaumount retaliated against him for his filing of numerous grievances not squarely addressed in the motion.

1

warranted on these claims, the Court will provide Defendants with 30 days within which to file a new summary judgment motion directed at the remaining retaliation claims against DHS Defendants Main and Beaumount, and will also provide Plaintiff the opportunity to file opposition to that motion.

## II. FACTUAL BACKGROUND[2] AND PROCEDURAL HISTORY

### a. Factual Background

In May 2010, Plaintiff was civilly committed to the Special Treatment Unit ("STU") as a sexually violent predator ("SVP") under New Jersey's Sexually Violent Predator Act ("SVPA"). Plaintiff appealed his commitment to the Superior Court of New Jersey, Appellate Division, which affirmed his commitment in an unpublished decision. *In re Civil Commitment of R.T.*, No. A-2521-13T2, 2016 WL 674215, at *1 (N.J. Super. Ct. App. Div. Feb. 19, 2016). Plaintiff was civilly committed as a sexually violent predator due to his sexually related arrests and convictions.[3] *See id.* at *2-5.

---

[2] The factual background is taken from the parties' papers. The Court notes that the DHS Defendants and Plaintiff have not complied with Fed. R. Civ. P. 56 or L. Civ. R. 56.1. As explained in Footnote 4, the DHS Defendants include blanket citations and unsupported assertions in their Statement of Undisputed Material Facts. For purposes of this motion, the Court disregards the DHS Defendants' assertions that are not based in fact and/or are improperly supported. Plaintiff has failed to submit a responsive statement of material facts with his opposition brief. Although the Court does not deem the DHS Defendants' factual assertions unopposed, it will not sift through Plaintiff's brief with a fine-tooth comb searching for any assertions challenging the DHS Defendants' factual assertions. Any further motions by the parties shall comply with the Federal and Local Civil Rules.

[3] According to the Appellate Division decision, Plaintiff's prior court history shows at least seven sexually related arrests, including convictions in 1984, 1999, and 2005, in Philadelphia and San Francisco. Since age thirteen he has also been charged with multiple non-sexual offenses in Pennsylvania, California, and Nevada, including theft, burglary, fraud, assault, drug and weapons offenses, vehicular manslaughter, and failure to register. (*Id.* at *1).

2

On or about August 2015, Plaintiff published a book: Civilly Committed!, ISBN-10 1516825292.[4] (*Id.* at ¶ 9 (citing ECF No. 1-6 PageID: 101).) A review of the topics in the book shows that it is critical of the SVPA and the STU, and views Plaintiff's continued detention as an SVP to be unnecessary and unconstitutional. It appears undisputed that Plaintiff's book includes personal identifying information and the un-redacted names of his victims. (*Id.* at ¶ 10 (citing ECF No. 1-6 PageID: 102).) It is also undisputed that Plaintiff is associated with a website with the domain name, "pimpinentertainment.net."[5] (*Id.* at ¶ 11 (citing ECF No. 1-6 PageID: 101).)

On August 29, 2015, Plaintiff wrote a letter to Defendant Main together with a "Press Release" about his book "Civilly Committed." In the letter, Plaintiff asks Defendant Main to review the book and provide comments, concerns, suggestions, and recommendations. (ECF No. 138-16, Plaintiff's Opposition at Ex. N.) It is also undisputed that Plaintiff was subsequently placed on Program MAP by Defendant Van Pelt in connection with the publication of the book and his alleged promotion of the website.[6]

---

[4] Plaintiff's book, Civilly Committed! is currently available for sale on Amazon, https://www.amazon.com/Civilly-Committed-Russell Tinsley/dp/1516825292/ref=sr_1_1?keywords=civilly+committed&qid=1550244185&s=gatewa y&sr=8-1-spell (last visited February 15, 2019).

[5] Plaintiff concedes that he uses the website as a source of income, but disputes that the website promotes a "rape mentality."

[6] MAP is a component of the clinical treatment program at the STU that focuses on stabilizing disruptive or dangerous behaviors. *See M.X.L. v. New Jersey Dep't of Human Servs./New Jersey Dep't of Corr.*, 379 N.J. Super. 37, 45, 876 A.2d 869, 873 (App. Div. 2005). The New Jersey courts have explained the treatment component as follows:

> There are four levels of MAP: Room, Tier, Wing, and Program. Room, Tier and Wing MAP restrict the unescorted motion of a resident to his room, his tier or his wing. The level of MAP placement is proportionate to the apparent danger or instability reflected by the resident. MAP levels represent an increasing return

3

On September 22, 2015, Defendant Van Pelt, wrote a Memorandum with the subject "Program Map", which states as follows:

> Resident Tinsley's pattern of poor judgment has reached the point at which its consequences compel DHS to intervene. His recent publication, available to the general public for purchase, specifies the name of one of his victims, who was a minor at the time of the offense. Such an action by Mr. Tinsley does not only demonstrate poor judgment, it's reflective of dismal treatment progress. Furthermore, Mr. Tinsley continues to promote his website that, by its very name, glorifies pimping which many would define as very much part of 'rape mentality.'
>
> Mr. Tinsley will be placed on Program MAP effective immediately. He is strongly recommended to pull his 'book' from publication to prevent further harm to his victims. His poor judgment, how it relates to treatment participation and progress, will be addressed while on Program MAP. As such, Mr. Tinsley's job will be suspended. Although Mr. Tinsley will not be prohibited from publishing or sending anything that can legally be published or sent, his restrictions will also include him having to process future correspondence and publications, written, music, and otherwise, with his therapists, particularly those to official entities, but excluding legal correspondence. His Treatment Team looks forward to the opportunity to assist Mr. Tinsley in exercising better judgment regarding such matters.
>
> Mr. Tinsley will be given the opportunity to process his MAP placement in the Process Group during the next 30 days. Should he require more time to process his MAP-related behavior and how it affects his victims and progress in treatment, Mr. Tinsley's Program MAP cycle may be extended beyond 30 days.

---

> of privileges, culminating in a return to the general population with all privileges reinstated.
>
> Program MAP is the lowest level of intervention and is instituted when a resident is unwilling to control his anti-social behaviors and has not developed the behavioral skills necessary to maintain appropriate control. MAP can take a number of forms[, including] the suspension of privileges. While in Program MAP, a resident continues to attend all assigned treatment groups unless specifically contra-indicated. MAP status is generally implemented for thirty-day periods, with a review of that status every thirty days or sooner if clinically appropriate.

*Id.* at 873-74.

> The Treatment Team will continue to monitor and assess Mr.
> Tinsley as he progresses through the MAP process and necessary
> interventions will be implemented as needed.

(ECF No. 1-6, Ex. D-2 at page 4.)

On November 23, 2015, Plaintiff was also placed in treatment refusal in connection with the publication of the book and continued promotion of the website, and for failing to meaningfully engage in treatment, and was reassigned from Treatment Group 14 to Treatment Group 1. (ECF No. 138-5, Plaintiff's Opposition at Ex. C.)

On November 23, 2015, Defendant Main wrote to Plaintiff in response to a grievance submitted by Plaintiff. In the letter, Defendant Main informs Plaintiff that his "'book' is clearly evidence that you are refusing treatment by striving to turn whatever treatment you receive into a self-serving process." Defendant Main further states that Plaintiff "risk[s] re-victimizing [his] victims by including full name along with city and state of residence at time of offense[,]"[7] "repeatedly call[ing his victims] prostitutes", and seeming to "take responsibility for [his] offenses but then, essentially, claim[ing] to be innocent." Defendant Main's letter to Plaintiff provides several examples from the book. (*See* ECF No. 138-5, Plaintiff's Opposition at Ex. C.)

Defendant Main further explains that Plaintiff's therapists and evaluators have been telling him that the website "pimpinentertainment.com" is "troubling as it is supportive of rape dynamics." (*Id.*) Defendant Main suggests that Plaintiff's therapists may be able to help him formulate a domain name change that will cause him minimal financial loss. (*Id.*)

The letter further states:

> Mr. Tinsley, we respect your right to publish whatever you wish
> and to name your business as you see fit. However, your book and
> domain name stand as evidence of no meaningful participation or

---

[7] In the letter, Defendant Main suggests that Plaintiff revise his book "to have no more than [his victims'] initials in whatever [he] write[s]."

5

> progress in your treatment. We offer rewards for that participation and progress in the form of paid institutional work, use of personal DVD player, game system, and television. You cannot earn these rewards by claiming that you're participating and progressing
>
> but then clearly showing otherwise.

(*Id.*)

A subsequent Memorandum from Defendant Van Pelt, issued on December 23, 2015, reads as follows:

> Resident Tinsley was placed on Program MAP on 9/22/15. Program MAP was necessitated due to his publication of a "book" which identifies full names of his victims and because he continues to promote his website *pimpinentertainment*.
>
> Mr. Tinsley Program MAP was extended on 10/23/15 and 11/23/15, as he did not adequately process his actions which led to Program MAP placement – he still has not. Mr. Tinsley will be allotted an additional 30 days to address his MAP placement in process group with the assistance of his Treatment Team and peers. Should Mr. Tinsley require more time to process his MAP-related behaviors and how they affect his progress in treatment, his Program MAP placement may be extended further.
>
> While on Program MAP, Mr. Tinsley will lose his privilege to work. He will also be expected to process future correspondence and publications – written music, and otherwise, with his therapists, particularly those to official entities, but excluding legal correspondence. Mr. Tinsley is again strongly recommended to pull his 'book' from publication (or at least redact the names of his victims) to prevent further harm to his victims. The Treatment Team will ask Mr. Tinsley to open the business books of pimpinentertainment.com. They will hold that information, as all other information, in confidence but will be offering an opinion about whether or not it is sufficiently profitable to suggest that a domain name change can be done with minimal financial loss.
>
> The Treatment Team will continue to monitor and assess Mr. Tinsley and recommendations concerning MAP placement will be made accordingly.

(ECF No. 138-5, Plaintiff's Opposition at Ex. C.)

After his placement on Program MAP, Plaintiff sought assistance from Kenneth Rozov, Assistant Ombudsman, Office of the Corrections Ombudsman. Plaintiff has provided a series of

6

letters memorializing his communications with Mr. Rozov and Mr. Rozov's attempts to intervene on his behalf with Defendant Main. In an October 30, 2015 letter to Defendant Main, Mr. Rozov states that Plaintiff informed him that Plaintiff was placed on Program MAP and Treatment Probation for publishing a book that uses the names of his alleged victims, and for having the rights to a website called pimpinentertainment.net. (ECF No. 138-11, Plaintiff's Opposition at Ex. I.) Mr. Rozov takes the position that this is a misuse of MAP, which he believes should be used for "behavioral acting out" and not for publishing a book. *Id.* In an October 30, 2015 letter to Rozov, Defendant Main strenuously disagrees with Mr. Rozov's assessment. (*See id.*)

Plaintiff was removed from Treatment Refusal status on August 22, 2016. (ECF No. 138-5, Plaintiff's Opposition at Ex. C.) On August 25, 2016, he was again placed on Treatment Refusal status for failing to redact or conceal the names of his victims from his book. (*See id.*) It is not clear from the record whether Plaintiff remains on Program Map or in Treatment Refusal status.

In a letter dated August 21, 2017, Defendant Main wrote to Plaintiff regarding his new grievance about his book. Defendant Main states that in the book, Plaintiff "basically assert[s] that [he] did not commit the sexual offenses for which [he was] convicted", which "shows that [he has] made little or no progress in treatment." Defendant Main finds it "ironic" that Plaintiff believes that he "published the book as evidence of the great progress [Plaintiff has] made in treatment." (*See id.*) Defendant Main further predicts that the courts will decide that the "we may decline to reward you for publishing a book that names victims, calls them prostitutes, essentially claims that you're innocent, and for choosing a domain name that we know to be supportive of rape dynamics." (*Id.*)

7

### b. Procedural History

Plaintiff initiated the instant civil action on October 6, 2015, naming as Defendants former DOC employee and STU Administrator, Sherry Yates; as well as DHS personnel, Merrill Main, Ph.D.; Shantay Adams; R. Van Pelt; J. Ottino; Lashonda Burley, Psy.D.; and Christopher Beaumount, Ph.D. [ECF No. 1]. On March 10, 2016, Defendants Adams, Beaumount, Burley, Main, Van Pelt, and Ottino filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 20), with DOC Defendant Sherry Yates filing her own Motion to Dismiss on March 29, 2016. (ECF No. 26). However, the latter's submission was filed improperly, and was ultimately terminated.

In the DHS Defendants' first motion to dismiss, the Court dismissed without prejudice all non-retaliation claims against the DHS Defendants, and denied the motion to dismiss as to certain First Amendment retaliation claims against Defendants Beaumount, Main, and Van Pelt, which are described in more detail below. On December 23, 2017, Plaintiff filed an Amended Complaint adding as Defendants DHS staff members Yaneris Corniel; J. Dmowski, Psy.D.; Kimberly Stokes, LCSW; and Dean De Crisce, M.D.; as well as Jo Astrid Glading of the Office of the Public Defender; and Mark Singer of the New Jersey Office of the Attorney General. (ECF No. 72 & 77). The DHS Defendants' motion to dismiss Plaintiff's Amended Complaint was filed on January 24, 2017 (ECF No. 86), and the Court dismissed, as to the DHS Defendants, all but the aforementioned First Amendment retaliation claims against Defendants Beaumount, Main, and Van Pelt. (ECF No. 105.) Defendant Yates also filed a Motion to Dismiss Plaintiff's Amended Complaint on August 21, 2017 (ECF No. 103); the Court denied the motion because it was filed out of time. (ECF No. 141.)

8

DHS Defendants Beaumount, Main, and Van Pelt filed a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 on February 9, 2018. (ECF No. 137.) Defendant Yates' motion for summary judgment was filed on July 23, 2018. (ECF No. 170.) Plaintiff has submitted opposition to both motions (ECF Nos. 138-39, 175), and Defendants have submitted their respective replies. (ECF Nos. 140, 179.) The matter is now ready for disposition.

## III. STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 447 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002).

The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. *Celotex*, 477 U.S. at 330. "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."

9

*Gleason v. Norwest Mortg.*, Inc., 243 F.3d 130, 138 (3d Cir. 2001). The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (quotations omitted). Under *Anderson*, Plaintiffs' proffered evidence must be sufficient to meet the substantive evidentiary standard the jury would have to use at trial. 477 U.S. at 255. To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quotations omitted); *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

A document filed pro se is to be "liberally construed" and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). In addition, when considering a motion in a pro se plaintiff's proceedings, a court

must "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999). Nevertheless, on a motion for summary judgment, "a pro se plaintiff is not relieved of his obligation under Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Ray v. Fed. Ins. Co.*, No. 05-2507, 2007 WL 1377645, at *3 (E.D. Pa. May 10, 2007). "[M]erely because a non-moving party is proceeding pro se does not relieve him of the obligation under Rule 56(e) to produce evidence that raises a genuine issue of material fact." *Boykins v. Lucent Techs., Inc.*, 78 F.Supp.2d 402, 408 (E.D. Pa. 2000); *see also Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017).

## IV. ANALYSIS

### a. Motion for Summary Judgment by Sherry Yates

The Court begins with the motion for summary judgment brought by Defendant Yates. The Court agrees with Defendant Yates that Plaintiff's allegations against her stem solely from her position as Administrator of the STU, and she is entitled to summary judgment because Plaintiff has not provided evidence that she was personally involved in the alleged violations of Plaintiff's civil rights.

Although Defendant Yates is named in the Complaint and Amended Complaint, and appears to have been a DOC Administrator during the relevant time period, there are no allegations in the Amended Complaint explaining how Defendant Yates is responsible for the alleged wrongs pleaded in the Amended Complaint. Plaintiff has not provided any evidence showing that Defendant Yates participated in any alleged wrongs, knew of the wrongs and acquiesced in them, issued or enforced any relevant policies, and/or failed to supervise or train the other individual Defendants. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)

11

(stating that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*"); *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316-19 (3d Cir. 2014) (outlining the general ways supervisors may be liable under § 1983), reversed on other grounds by *Taylor v. Barkes*, 135 S. Ct. 2042, 2043 (2015). Any liability she may have appears premised on an impermissible theory of *respondeat superior*.

Defendant Yates was not involved, directly or indirectly, in denying Plaintiff' advancement in treatment or placing him on MAP status in response to the publication of his book, the promotion of the website, or his filing of grievances. Moreover, the Court previously dismissed <u>without prejudice</u> all non-retaliation claims in the Amended Complaint, including Plaintiff's Fourteenth Amendment claims arising from his conditions of confinement at the STU and the denial of adequate treatment. Because Plaintiff failed to allege colorable violations of the Fourteenth Amendment arising from his conditions of confinement or inadequate treatment, and has not cured those deficiencies through amendment, Defendant Yates cannot be held liable for these violations as a supervisor.

Finally, Plaintiff has not provided <u>any evidence</u> that Defendant Yates participated in any violations of his constitutional rights. At the summary judgment stage, Plaintiff must move beyond the pleadings and provide such evidence. *See Boykins v. Lucent Techs., Inc.*, 78 F.Supp.2d at 408. The failure to do so is fatal to his claims against Defendant Yates.

For these reasons, the Court will grant Defendant Yates' motion for summary judgment.

### b. Motion for Summary Judgment by the DHS Defendants

The DHS Defendants also move for summary judgment. The Court begins its analysis by clarifying the First Amendment retaliation claims at issue in the instant litigation. In denying

Defendants' motions to dismiss the Original and Amended Complaints, the Court assessed the conduct of each DHS Defendant separately and denied the motions to dismiss on the basis of two separate types of constitutionally protected activity: (1) the Court denied the motions to dismiss Plaintiff's allegations that Defendant Van Pelt retaliated against Plaintiff in connection with his publication of a book about his civil commitment;[8] and (2) the Court denied the motion to dismiss Plaintiff's allegations that Defendant Main and Defendant Beaumount retaliated against Plaintiff for his filing of numerous grievances.

The DHS Defendants' motion for summary judgment addresses the First Amendment retaliation claims against Defendant Van Pelt in connection with Plaintiff's publication of the book and promotion of the website, but fails to address the First Amendment retaliation claims against Defendants Beaumount and Main in connection with Plaintiff's filing of grievances. As explained below, the Court will grant summary judgment to Defendant Van Pelt for the retaliation claims arising from the publication of the book and the promotion of the website, but does not address the retaliation claims against Defendants Beaumount and Main arising from Plaintiff's filing of grievances.

Retaliation against a prisoner based on his exercise of a constitutional right violates the First Amendment. *Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012) (citing *Mitchell v. Horn*, 318 F.3d 523, 529–31 (3d Cir. 2003); *Rauser v. Horn*, 241 F.3d 330, 333–34 (3d Cir. 2001); *Allah v. Seiverling*, 229 F.3d 220, 224–26 (3d Cir. 2000). To prevail on a retaliation claim, plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary

---

[8] Plaintiff also asserts that Defendant Van Pelt retaliated against him for his association with a website called pimpinentertainment.net, and the Court addresses this allegation together with the publication of the book.

13

firmness from exercising his [constitutional] rights"; and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. *Rauser*, 241 F.3d at 333 (quoting *Allah*, 229 F.3d at 225); *see also Tinsley v. Giorla*, 369 F. App'x 378, 381 (3d Cir. 2010).

The Court now considers whether Defendant Van Pelt is entitled to summary judgment on Plaintiff's First Amendment retaliation claim arising from Plaintiff's publication of a book and his promotion of a website. For the reasons explained below, the Court finds that the Third Circuit's decision in *Oliver v. Roquet*, 858 F.3d 180 (2017) controls, and the Court will grant summary judgment on the First Amendment retaliation claims against Defendant Van Pelt.

In *Oliver v. Roquet*, which was decided after this Court denied Defendants' first motion to dismiss, the plaintiff, also an SVP, was denied advancement to the next phase of treatment, and he sued a psychologist at the STU for allegedly retaliating against him for his own legal activities and his legal activities on behalf of other residents. The primary facts in support of the retaliation claim were contained in a report, which, among other things, suggested that the plaintiff may need to consider whether his focus on legal activities was interfering with his treatment. *See id.* at 185-86. *Oliver* was decided at the motion to dismiss stage, and the Third Circuit clarified the pleading requirements for a retaliation claim against a mental health professional at a state institution, holding that "a prima facie showing of causation requires more than the allegation that the professional based a medical decision on symptomology that happened to relate in some way to a patient's protected activity." Instead, there must be particular facts alleged that allow the court to reasonably infer it is the protected activity itself, and not simply medically relevant behavior associated with that activity, that formed the basis of the defendant's adverse action." *Id.* at 192. Thus, after *Oliver*, to state a First Amendment

14

retaliation claim against a medical professional based on treatment decisions that seem to target or affect a protected activity, a Plaintiff must provide facts showing that the medical professional targeted the protected speech itself and not just the legitimate clinical or collateral consequences of that speech.

According to the Third Circuit,

> "[t]his is so because a medical professional's holistic approach to diagnosing a patient's mental health will sometimes require consideration of his otherwise protected speech and conduct to evaluate any adverse consequences they are having on his treatment. Framed in terms of the *Rauser* test and the relevant pleading standards, an assertion by a mental health detainee that his treating psychologist retaliated against him, based only on the factual allegation that the psychologist considered the effect his First Amendment activity was having on his treatment, would not support the inference that retaliation was the "substantial or motivating factor" for the psychologist's recommendation.

*Oliver*, 858 F.3d at 192.

The Third Circuit further explained that a medical report or decision "purporting to focus only on the collateral consequences of a detainee's First Amendment activity could be sufficient to establish a prima facie case of retaliation plaintiff where the plaintiff is able to plead 'consideration plus,'—i.e., where, in addition to consideration of the protected activity by way of its association with medically relevant conduct, there are specific factual allegations supporting an inference that the adverse action was based on the protected activity itself." *Id.* "Consideration plus" may exist, for example, where the complaint contained "specific factual allegations suggesting that the collateral consequences were fabricated, [allegations] that the defendant had communicated anger or frustration with the protected activity itself or had threatened to take action against the plaintiff, or [allegations] that the collateral consequences relied upon were irrelevant to the medical judgment in question." *Id.*

15

Here, Plaintiff asserts a First Amendment retaliation claim against Defendant Van Pelt because Van Pelt placed him on Program MAP in connection with his publication of a book and his promotion of a website entitled "pimpinentertainment.net." Similar to the facts in *Oliver*, Plaintiff's Complaint, Amended Complaint, and the exhibits to his Opposition Brief rely primarily on Memoranda issued by Defendant Van Pelt. The Memoranda plainly indicate that Defendant Van Pelt considered the effect Plaintiff's First Amendment activities were having <u>on his treatment</u>; thus, pursuant to *Oliver*, the Memoranda do not, without more, suggest that Defendant Van Pelt was targeting the constitutionally-protected activity itself, i.e., the book or the website. In the Memoranda, Defendant Van Pelt expresses concern that Plaintiff's publication of a book that uses the full the names of his victims, reflects bad judgment and a lack of treatment progress and that Plaintiff's promotion of the website "glorifies pimping" and "rape mentality." Nothing in the Complaint/Amended Complaint or in the exhibits presented by Plaintiff in his opposition create a triable issue of fact suggesting that Plaintiff's placement on Program MAP (or Treatment Refusal) was based on his First Amendment activities themselves, i.e. the book or the website. Indeed, DHS Defendants Van Pelt and Main indicate Plaintiff could remedy the situation by redacting the names of his victims from the book and by changing the name of his website.

In his opposition, Plaintiff has not provided any evidence that the collateral consequences of his First Amendment activities are fabricated, that Defendant Van Pelt (or Defendant Main) expressed anger or frustration with the protected activities themselves, or that Plaintiff's identification of his victims in the book and/or the use of the domain name pimpinentertainment.net are irrelevant to Plaintiff's treatment as an SVP. Although exhibits submitted by Plaintiff indicate that Mr. Rozov, the Assistant Ombudsman, apparently

16

disapproves of Plaintiff's placement on Program MAP in connection with his book and the website, and believes such placement is a misuse of Program MAP, this disagreement between Mr. Rozov and Defendant Main does not suggest that the Defendant Van Pelt (or Defendant Main) was targeting Plaintiff's protected activities themselves.[9] Because Plaintiff cannot establish sufficient causation to sustain his First Amendment retaliation claim against Defendant Van Pelt, the Court will grant summary judgment to Defendant Van Pelt on Plaintiff's First Amendment retaliation claim in connection with the book and website.[10]

### c. Remaining Retaliation Claims Against Defendants Main and Beaumount

The remaining issues in this litigation are whether Defendants Beaumount and/or Main retaliated against Plaintiff by failing to advance Plaintiff in treatment due to his filing of numerous grievances. The parties appear to agree that throughout his civil commitment at the STU, Plaintiff frequently filed internal grievances regarding his treatment and other aspects of his conditions of confinement at the STU. (DSMF at ¶ 7 (citing ECF No. 1-5 PageID: 62-98).) Plaintiff attached to his original Complaint numerous grievances he has filed in connection with his treatment.[11] (*See* ECF No. 1-5, Ex. C to Complaint.) In a September 9, 2014, letter to his

---

[9] With his opposition, Plaintiff also submitted a "Confidential Report" dated September 9, 2015, and prepared by Ronald G. Silikovitz, Ph.D. at the request of Plaintiff's public defender. The report, which recommends Plaintiff's release from the STU, does not provide any insight into the issue at hand – whether Plaintiff's placement on Program MAP was retaliatory.

[10] In denying the second motion to dismiss, the Court did not construe Plaintiff to raise a supervisory claim against Defendant Main based on his knowledge and acquiescence in Defendant Van Pelt's decision to place Plaintiff on MAP status in connection with the book and website. To the extent Plaintiff seeks to bring such a supervisory claim, Defendant Main would also be entitled to summary judgment because Defendant Van Pelt did not violate Plaintiff's constitutional rights by considering the effect of Plaintiff's First Amendment activities on his treatment. Nor has Plaintiff submitted any evidence suggesting that Defendant Main was independently targeting Plaintiff's protected activities, as the letters from Defendant Main also focus on the effect Plaintiff's protected activities have on his treatment.

[11] With a general citation to the grievances attached to Plaintiff's complaint, the DHS Defendants contend that Plaintiff's grievances demonstrate that he "refuses to participate in aspects of his

17

public defender, Plaintiff asserts that his therapist Defendant Beaumount, failed to advance him in treatment based on complaints Plaintiff made against Beaumount and another therapist. According to the letter, Plaintiff's grievances led to an investigation of the therapists by DHS and the Division of Mental Health and Newark Board of Psychologists. (*See* ECF No. 138-16, Plaintiff's Opposition Br. at Ex. N.) In an October 7, 2014 letter response to Plaintiff's September 4, 2014 letter, Defendant Main acknowledges that Plaintiff has "every right to complain", but suggests that "putting additional energy into your treatment may be wiser." (*Id.*) Plaintiff appears to assert in his Complaint and Amended Complaint, however, that Defendant Main told him on or about October 11, 2014 that Plaintiff would never advance in treatment if he continued to file grievances.[12] (*See* ECF No. 77, Amended Complaint at ¶ 40.)

As noted above, the Court does not address these issues in the instant motion because they were not fairly raised in the DHS Defendants' summary judgment motion, and Plaintiff has not had an opportunity to respond. Under Fed. R. Civ. P. 56(f), the Court, after giving the parties notice and an opportunity to respond, is permitted to (1) grant summary judgment on a ground not raised by the parties or (2) consider summary judgment on its own after identifying the material facts that may not be in dispute. Because the parties are in a better position to identify the material facts relevant to these issues, the Court will instead provide the DHS Defendants

---

sex offender treatment, commits institutional infractions, and violates STU conduct policies."
*See id.* at ¶ 8. The Court disregards this paragraph, as it contains only a blanket citation and is plainly the DHS Defendants' interpretation of the grievances and not a factual assertion. Similarly, the Court disregards the DHS Defendants' argument in their brief that the numerous grievances filed by Plaintiff demonstrate a pattern of oppositional behavior and that the responses by the DHS Defendants were reasonable and thorough. (*See* Moving Brief at 137-2), as the record before the Court does not permit the Court to make such determinations, and many of the grievances submitted by Plaintiff are illegible.

[12] In their Statement of Undisputed Material Facts and briefing, the DHS Defendants do not squarely address these or other allegations that Defendants Beaumount and Main retaliated against Plaintiff for his filing of grievances.

with an opportunity to move for summary judgment on the remaining claims within 30 days of the date of this Order. Plaintiff shall have 30 days to submit his response,[13] and Defendants may submit a reply within 7 days thereafter.

## V. CONCLUSION

For the reasons explained in this Opinion, summary judgment is granted to Defendants Yates and Van Pelt. The DHS Defendants may file a summary judgment motion as to the remaining claims against Defendants Main and Beaumont within 30 days. Plaintiff may file his response within 30 days, and Defendants may file a reply within 7 days. An appropriate Order follows.

Dated: Feb 26-19

Madeline Cox Arleo, U.S.D.J.

---

[13] On November 30, 2018, Charles H. Landesman entered an appearance on behalf of Plaintiff. (ECF No. 185.) It is not clear if Mr. Landesman intends to represent Plaintiff on future motions and/or at trial. Because it is not clear that Plaintiff is represented, the Court will provide additional time for Plaintiff to respond to Defendants' motion and will send copies of the Court's Opinion and Order to him at the address on file.

19