UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RUSSELL TINSLEY,<br><br>Plaintiff,<br><br>v.<br><br>MERRILL MAIN, PH.D., STU CLINICAL DIRECTOR, et al.,<br><br>Defendants. | Civil Action No. 15-7319(MCA)<br><br><br>OPINION |

## I. INTRODUCTION

This matter having been opened to the Court by Defendants Merrill Main, Ph.D., R. Van Pelt, and Christopher Beaumont, Ph.D.[1] ("the DHS Defendants") (ECF No. 195) on a motion for summary judgment as to Plaintiff Russell Tinsley's ("Plaintiff") First Amendment retaliation claims against Defendants Main and Beaumont in connection with Plaintiff's submission of grievances, complaints, and/or lawsuits. For the reasons explained in this Opinion, the Court will grant the motion for summary judgment as to Defendant Beaumont and will deny the motion for summary judgment as to Defendant Main. The Court will also deny Plaintiff's motion for reconsideration of the Court's prior decision granting summary judgment to Defendants Van Pelt and Sherry Yates, and deny without prejudice Plaintiff's motion to remove his counsel.

---

[1] Defendant Christopher Beaumont, Ph.D. appears to be improperly pleaded as Christopher Beaumount, Ph.D.

1

## II. FACTUAL BACKGROUND

In May 2010, Plaintiff was civilly committed to the Special Treatment Unit ("STU") as a sexually violent predator ("SVP") under New Jersey's Sexually Violent Predator Act ("SVPA").[2] Merrill Main, Ph.D., is a licensed clinical psychologist and the Clinical Director at the STU and supervised the treatment of Plaintiff during the relevant time period. (ECF No. 195-2, Defendants' Statement of Material Facts "DSMF" at ¶ 1.) Christopher Beaumont, Ph.D., is a clinical psychologist in the STU and treated Plaintiff during the relevant time period. (DSMF at ¶¶ 9-10.)

It appears undisputed that Plaintiff has submitted numerous grievances, complaints, and lawsuits related to his confinement in the STU. The grievances, complaints, and lawsuits challenge Plaintiff's civil commitment, the inadequacy of his sex offender treatment, the failure to promote him to the next stage of treatment, and the restrictive nature of his confinement on the South Unit of the STU. In his grievances, complaints, and lawsuits, Plaintiff also alleges misconduct by STU staff, including alleged retaliatory conduct by Defendants Main and Beaumont.[3]

Defendant Beaumont has worked directly with Plaintiff as a front-line therapist. (DSMF at ¶¶ 9-10.) Specifically, Defendant Beaumont has facilitated two process groups (that is, Treatment Orientation ##2 and 18) and one psycho-educational module (that is, Relapse

---

[2] Plaintiff appealed his commitment to the Superior Court of New Jersey, Appellate Division, which affirmed his commitment in an unpublished decision. *In re Civil Commitment of R.T.*, No. A-2521-13T2, 2016 WL 674215, at *1 (N.J. Super. Ct. App. Div. Feb. 19, 2016).

[3] Plaintiff has attached exhibits to his opposition brief showing that he continues to file complaints about DHS employees to various state, federal, and private agencies. For instance, on April 18, 2018 he wrote to the U.S. Department of Health and Human Services seeking an investigation of the STU and Defendant Main. (*See* ECF No. 199-2, Plaintiff's Cert. at Exhibit H.) He has also written to The Department of Justice, Citizens Commission on Human Rights International, and The American Psychological Ethics Office. (*Id.* at Exhibits H-K.)

2

Prevention 1A.B) with Plaintiff. Defendant Beaumont asserts that while he was working with Plaintiff as one of his front-line therapists, he encouraged Plaintiff to process salient therapeutic issues during the group process while also focusing on sex-offender-specific dynamics. (DSMF at ¶¶ 10-11.)

It is undisputed that Plaintiff submitted several Remedy Forms expressing dissatisfaction with Defendant Beaumont during the relevant time period. (ECF No. 199-2, Plaintiff's Cert., Exhibit L at 129-135.) On September 9, 2014, Plaintiff also submitted a "Complaint" contending that on September 8, 2014, Defendants Beaumont "brushed off evidence of [Plaintiff's] successful completion" of certain treatment modules and recommended that Plaintiff repeat the modules despite his high scores.[4] Plaintiff further asserted that other residents were moved off the South Unit and/or advanced to the next module, and he believed that his failure to advance was the result of complaints Plaintiff has brought against Defendant Beaumont and his other therapists, resulting in an investigation by the DHS and the Newark Board of Psychologists.[5] (*Id.* at 135.) There is no record evidence of a complaint to the Newark Board of Psychologists. Plaintiff did, however, submit a Complaint to the New Jersey State Board of Psychological Examiners in 2014, asking them to investigate Defendant Beaumont and Dr. Burley's decision not to advance him in treatment.[6] (Plaintiff's Cert., Exhibit M at 139-140.) Plaintiff has not provided the date he first submitted his Complaint about Defendant Beaumont to the New Jersey State Board of Psychological Examiners, but it appears that the Complaint

---

[4] It is not clear if this Complaint is an internal grievance or was sent to an outside agency.

[5] Plaintiff submitted a similar "Complaint" dated September 30, 2014, in which he contends that Defendant Beaumont is retaliating against him due to complaints he filed against them. (*See id.* at 136.)

[6] Plaintiff appears to concede that the New Jersey State Board of Psychological Examiners found no basis to pursue any disciplinary action against Defendant Beaumont and recommended that he pursue other legal avenues. (*See* Plaintiff's Cert., Ex. M at 141-143.)

3

against Defendant Beaumont was filed prior to September 9, 2014. (*See* ECF No. 195-4, Beaumont Cert. at ¶ 7, Exhibits A-B.)

Defendant Beaumont asserts that his role as Plaintiff's therapist did not require him to respond to resident grievances because they are administrative in nature; consequently, Defendant Beaumont asserts that he neither received grievances submitted by Plaintiff nor was ever made aware of one submitted by him regarding any treatment as one of his front-line therapists. (DSMF at ¶¶ 12-13.) Because he neither received nor was made aware of any grievances from Plaintiff, Defendant Beaumont asserts that his treatment decisions did not have anything to do with Plaintiff's grievances and that his treatment decisions were based on his professional evaluation and judgment of Plaintiff's psychological needs.[7] (DSMF at ¶ 14.) Defendant Beaumont appears to concede that he was aware of Plaintiff's Complaint filed with the New Jersey State Board of Psychological Examiners and has attached to his certification his letter responses to the September 9, 2014 and October 7, 2014 letters from the State Board of Psychological Examiners. (Beaumont Certification at ¶ 7, Exhibits A-B.)

It also appears undisputed that Defendant Main was aware of Plaintiff's frequent filing of grievance, complaints, and lawsuits.[8] (*See* ECF No. 195-3, Main Certification at ¶ 5, Ex. A and B; Plaintiff's Cert., Ex. A at 7-14.) Plaintiff asserts that on or about October 11, 2014, Defendant Main told Plaintiff he would never advance in treatment if he continued to file grievances and lawsuits. To support his allegation, Plaintiff has submitted a Remedy Form dated

---

[7] Plaintiff appears to concede that Defendant Beaumont has no role in reviewing internal grievances, and has not provided any evidence to the contrary. (*See* 199-2, Plaintiff's Cert. at ¶¶ 25-32.)

[8] In 2014, Plaintiff also filed a Complaint to the New Jersey State Board of Psychological Examiners against Defendant Main. (*See* DSMF at ¶¶ 7-8; ECF No. 199-2, Plaintiff's Cert., Exhibit A at 14.)

4

October 29, 2014, in which he states: "On **Thursday October 11, 2014**[,] after the Community Meeting with DHS staff[,] Merrill Main, STU Clinical Director made statements to me that may be Retaliatory ...." [9] (Plaintiff's Cert., Exhibit A at 8 (emphasis added).) Defendant Main responded personally to this grievance, but his response is illegible.[10] (*See id.*) In response to the DHS Defendants' summary judgment motion, Plaintiff has submitted a sworn certification stating that Merrill Main told him on or about October 11, 2014, that no matter how much progress Plaintiff made in treatment, that his complaints and lawsuits would "only hurt any and all chances for [Plaintiff] to ever get discharge[d] and [Plaintiff] will never get off the South Unit."[11] (Plaintiff's Cert. at ¶ 8.)

Defendant Main disputes that he made this statement, and asserts that he would never tell any resident that he could not advance in treatment if he continued to file grievances. (DSMF at

---

[9] As noted by the DHS Defendants, October 11, 2014 was a Saturday. It is possible, of course, that this exchange occurred on Thursday October 9, 2014, or on some other date in early October.

[10] Because the staff response portion of the grievance is illegible, it is not clear if Defendant Main denied speaking to Plaintiff around that time as he has represented in his certification to the Court.

[11] In his exhibits, Plaintiff has also provided a letter brief submitted in the Superior Court of New Jersey, in which Plaintiff cites to his own deposition testimony taken on June 28, 2018, in which Plaintiff asserted that Defendant Main told him

> you are never going to get off the South Unit, because of your grievances. You filing your lawsuits and you'll never get off the South Unit. Matter of fact you know your chances of ever getting out of here is being taken away from you. This guy specifically said this.

(*See* Plaintiff's Cert., Exhibit B at 20.) It appears that Plaintiff was deposed in this action on or about June 28, 2018 (*See* ECF No. 166, July 9, 2018 letter of Kevin J. Dronson, DAG), but neither party has attached any portions of Plaintiff's June 28, 2019 deposition.

5

¶ 6.) Defendant Main also appears to dispute that the October 11, 2014 conversation occurred.[12] He avers that October 11, 2014 was a Saturday, and that he did not work on that day. (DSMF at ¶ 2.) Defendant Main also contends that he and Plaintiff would not have spoken directly with each other around that time because Defendant Main would have been available to speak with him only during monthly resident-community meetings, and Plaintiff did not attend these meetings. (*See* DSMF at ¶ 3.)

In letters to Plaintiff dated October 7, 2014 and November 17, 2014, Defendant Main cautioned Plaintiff that his grievances, lawsuits, and legal arguments were interfering with his treatment. (Main Cert. ¶ 5, Exhibits A, B.) Defendant Main asserts that his concerns about Plaintiff's protected activities were exclusively motivated by legitimate treatment concerns. (Main Cert. ¶ 5.)

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility

---

[12] It is not clear if Defendant Main disputes that he spoke directly to Plaintiff about his filing of grievances or merely disputes that he spoke to Plaintiff about his filing of grievances on October 11, 2014.

6

determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 447 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002).

The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. *Celotex*, 477 U.S. at 330. "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg.*, Inc., 243 F.3d 130, 138 (3d Cir. 2001). The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (quotations omitted). Under *Anderson*, Plaintiffs' proffered evidence must be sufficient to meet the substantive evidentiary standard the jury would have to use at trial. 477 U.S. at 255. To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quotations omitted); *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

A document filed pro se is to be "liberally construed" and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). In addition, when considering a motion in a pro se plaintiff's proceedings, a court must "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999). Nevertheless, on a motion for summary judgment, "a pro se plaintiff is not relieved of his obligation under Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Ray v. Fed. Ins. Co.*, No. 05-2507, 2007 WL 1377645, at *3 (E.D. Pa. May 10, 2007). "[M]erely because a non-moving party is proceeding pro se does not relieve him of the obligation under Rule 56(e) to produce evidence that raises a genuine issue of material fact." *Boykins v. Lucent Techs., Inc.*, 78 F.Supp.2d 402, 408 (E.D. Pa. 2000); *see also Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017).

### IV.  ANALYSIS

#### a. Remaining Retaliation Claims

As the Court explained in its prior Opinion, the remaining issues in this litigation are whether Defendants Beaumont and/or Main retaliated against Plaintiff by failing to advance Plaintiff in treatment or keeping him on the South Unit due to his filing of numerous grievances, complaints, and/or lawsuits. The Court declined to address these issues in its prior Opinion

because they were not fairly raised in the DHS Defendants' summary judgment motion, and Plaintiff had not had an opportunity to respond. Pursuant to Fed. R. Civ. P. 56(f), the Court determined that the parties were in a better position to identify the material facts relevant to these issues, and provided the DHS Defendants with an opportunity to move for summary judgment on the remaining claims.

The DHS Defendants filed their second summary judgment motion on March 27, 2019. On April 8, 2019, Plaintiff submitted his opposition. On April 17, 2019, the DHS Defendants submitted a reply. And on April 18, 2019, Plaintiff's counsel submitted a letter brief joining Plaintiff's opposition and adding additional argument. The matter is fully briefed and ready for disposition.

Retaliation against a prisoner or civil detainee based on his exercise of a constitutional right violates the First Amendment. *See Bistrian v. Levi*, 696 F.3d 352, 376 (3d Cir. 2012) (citing *Mitchell v. Horn*, 318 F.3d 523, 529–31 (3d Cir. 2003); *Rauser v. Horn*, 241 F.3d 330, 333–34 (3d Cir. 2001); *Allah v. Seiverling*, 229 F.3d 220, 224–26 (3d Cir. 2000). In order to state a prima facie case of First Amendment retaliation, a prisoner must assert that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action.[13] *See Rauser v. Horn*, 241 F.3d at 333. A prisoner's ability to file grievances and

---

[13] Once a prisoner establishes a *prima facie* case of retaliation, the burden then shifts to the defendant to establish that he would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest (the "same decision" defense). *See Rauser*, 241 F.3d at 334; *Watson v. Rozum*, 834 F.3d 417, 425-26 (3d Cir. 2016); *Pepe v. Lamas*, 679 F. App'x. 173, 176 (3d Cir. 2017). The Court does not address the same decision defense because Defendants have argued only that Plaintiff has not established a *prima facie* case of retaliation.

9

lawsuits against prison officials is a constitutionally protected activity for purposes of a retaliation claim. *See Milhouse v. Carlson*, 652 F.2d 371, 373–74 (3d Cir. 1981); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).

Here, the constitutionally protected activities are Plaintiff's grievances, complaints, and/or lawsuits, and the adverse actions are Defendants' refusals to advance him in treatment and Plaintiff's restriction to the South Unit. The DHS Defendants assert that Plaintiff is unable to show that Defendants Beaumont or Main targeted his protected speech rather the legitimate clinical or collateral consequences of that speech, pursuant to *Oliver v. Roquet*, 858 F.3d 180 (3d Cir. 2017), and also fails to show the required causal connection between his grievances and/or complaints/lawsuits and the failure to progress in treatment. (*See* ECF No. 195-1.) The Court addresses only the arguments made by the DHS Defendants and considers each Defendant separately, beginning with Defendant Main.

As it found in its prior decision granting summary judgment to Defendant Van Pelt, the Court finds that the Third Circuit's decision in *Oliver v. Roquet*, 858 F.3d 180 (2017) controls the Court's analysis of the claims against Defendant Main. In *Oliver v. Roquet*, the plaintiff, also an SVP, was denied advancement to the next phase of treatment, and he sued a psychologist at the STU for allegedly retaliating against him for his own legal activities and his legal activities on behalf of other residents. The primary facts in support of the retaliation claim were contained in a report, which, among other things, suggested that the plaintiff may need to consider whether his focus on legal activities was interfering with his treatment. *See id.* at 185-86. In *Oliver*, the Third Circuit clarified the pleading requirements for a retaliation claim against a mental health professional at a state institution, holding that "a prima facie showing of causation requires more

than the allegation that the professional based a medical decision on symptomology that happened to relate in some way to a patient's protected activity." Instead, there must be particular facts alleged that allow the court to reasonably infer it is the protected activity itself, and not simply medically relevant behavior associated with that activity, that formed the basis of the defendant's adverse action." *Id.* at 192. Thus, after *Oliver*, to state a First Amendment retaliation claim against a medical professional based on treatment decisions that seem to target or affect a protected activity, a Plaintiff must provide facts showing that the medical professional targeted the protected speech itself and not just the legitimate clinical or collateral consequences of that speech.

As explained by the Third Circuit,

> "[t]his is so because a medical professional's holistic approach to diagnosing a patient's mental health will sometimes require consideration of his otherwise protected speech and conduct to evaluate any adverse consequences they are having on his treatment. Framed in terms of the *Rauser* test and the relevant pleading standards, an assertion by a mental health detainee that his treating psychologist retaliated against him, based only on the factual allegation that the psychologist considered the effect his First Amendment activity was having on his treatment, would not support the inference that retaliation was the "substantial or motivating factor" for the psychologist's recommendation.

*Oliver*, 858 F.3d at 192.

The Third Circuit further explained that a medical report or decision "purporting to focus only on the collateral consequences of a detainee's First Amendment activity could be sufficient to establish a prima facie case of retaliation where the plaintiff is able to plead 'consideration plus,'—i.e., where, in addition to consideration of the protected activity by way of its association with medically relevant conduct, there are specific factual allegations supporting an inference that the adverse action was based on the protected activity itself." *Id.* "Consideration plus" may exist, for example, where the complaint contained "specific factual allegations suggesting that

11

the collateral consequences were fabricated, [allegations] that the defendant had communicated anger or frustration with the protected activity itself or had threatened to take action against the plaintiff, or [allegations] that the collateral consequences relied upon were irrelevant to the medical judgment in question." *Id.*

Here, the DHS Defendants acknowledge that Defendant Main was involved directly with the supervision of Plaintiff's treatment but contend that Main's October 7, 2014 and November 17, 2014 letters to Plaintiff show that he had legitimate clinical concerns that Plaintiff's grievances, complaints, and threats of legal action were affecting his treatment. The DHS Defendants assert that Defendant Main was motivated <u>exclusively by these treatment concerns</u>. Plaintiff, however, has asserted that Defendant Main told him in a conversation on or about October 11, 2014, that he would not be discharged from the STU or get out of the restrictive South Unit if he continued to file grievances and lawsuits. These allegations, which are supported by Plaintiff's sworn statement, his contemporaneous Remedy Form dated October 29, 2014, and his deposition testimony, suggest that Defendant Main targeted the the protected activity itself, i.e., the grievances, complaints, and/or lawsuits. Plaintiff's allegations thus provide the consideration plus, as required by *Oliver*, and, it proven, could allow a jury to find that Plaintiff satisfied the causal connection between his filing of grievances and/or lawsuits and the failure to progress in treatment and/or his continued confinement in the restrictive South Unit. Although Defendant Main disputes that he made such statements to Plaintiff and notes discrepancies in the date provided by Plaintiff, the resolution of these disputed facts rests on credibility determinations that must be resolved by a fact finder. For these reasons, the Court finds that Plaintiff has established a prima facie case of retaliation against Defendant Main in

connection with his filing of grievances and complaints.[14] The Court therefore denies summary judgment on the First Amendment retaliation claim against Defendant Main in connection with Plaintiff's filing of grievances, complaints, and/or lawsuits.

The Court will, however, grant summary judgment to Defendant Beaumont on Plaintiff's claim that he retaliated against Plaintiff for his filing of grievances, complaints, and/or lawsuits. The DHS Defendants argue that Plaintiff fails to provide any causal evidence linking Defendant Beaumont's treatment decisions to his filing of grievances, complaints, and/or lawsuits. The Court agrees. Plaintiff can provide evidence of a retaliatory motive through either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link. *See Watson v. Rozum*, 834 F.3d 417, 422 (3d. Cir. 2016). Here, Plaintiff has not provided evidence of an unusually suggestive temporal proximity or a pattern of antagonism coupled with timing. He has not submitted any evidence that Defendant Beaumont knew about Plaintiff's internal grievances against him. Nor has Plaintiff provided any evidence that Defendant Beaumont knew about Plaintiff's Complaint (or Plaintiff's plan to file such a Complaint) to the New Jersey State Board of Psychological Examiners, or other protected conduct, prior to making specific treatment recommendations or decisions. The evidence suggests only that Defendant Beaumont received a letter dated September 9, 2014 from the New Jersey State Board of Psychological Examiners, but had already made relevant treatment decision on or about September 8, 2014. In sum, the Court agrees with the DHS Defendants that Plaintiff First Amendment retaliation claim against Defendant Beaumont fails on causation, and will grant

---

[14] The DHS Defendants have not asserted the "same decision" defense or qualified immunity in their motion for summary judgment.

13

summary judgment to this Defendant on Plaintiff's First Amendment retaliation claim in connection with Plaintiff's filing of grievances, complaints, and lawsuits.

### b. Motion for Reconsideration

Plaintiff also seeks reconsideration of the Court's February 28, 2019 decision granting summary judgment to Defendants Van Pelt and Sherry Yates. "[R]econsideration is an extraordinary remedy, that is granted very sparingly." *Brackett v. Ashcroft*, No. 03-3988, 2003 U.S. Dist. LEXIS 21312, at *5, 2003 WL 22303078 (D.N.J. Oct. 7, 2003). A court will grant a motion for reconsideration only if the movant establishes: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not previously available; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice. *Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citing *N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir.1995)). Under Local Civil Rule 7.1(i), a party making a motion for reconsideration must submit a "brief setting forth concisely the matter or controlling decisions which the party believes the Judge ... has overlooked." D.N.J. Civ. R. 7.1(i). In other words, the movant may address only matters that were presented to the Court, but were not considered by the Court in making the decision at issue. *United States v. Compaction Sys. Corp.*, 88 F.Supp.2d 339, 345 (D.N.J. 1999). Plaintiff's arguments recapitulate the factual and legal issues already adjudicated by the Court. Because Plaintiff's motion does not meet the legal standard, the Court will deny the motion for reconsideration.

### c. Motion to Remove Counsel

Finally, the Court will deny without prejudice Plaintiff's request to remove his counsel. Pursuant to L. Civ. R. 102.1, unless other counsel is substituted, withdrawal of counsel requires leave of court. In deciding whether to permit an attorney to withdraw the court should consider:

14

(1) the reasons why withdrawal is sought; (2) the prejudice withdrawal may cause to other litigants; (3) the harm withdrawal might cause to the administration of justice; and (4) the degree to which withdrawal will delay the resolution of the case. *Rusinow v. Kamara*, 920 F. Supp. 69, 71 (D.N.J. 1996). Here, the request to remove counsel was submitted by plaintiff and counsel has not addressed the factors listed above, namely the reason for the withdrawal and its effect on the remaining proceedings. For these reasons, the Court will deny without prejudice Plaintiff's request to remove Mr. Landesman as counsel.

V. **CONCLUSION**

For the reasons explained in this Opinion, the DHS Defendants motion for summary judgment is granted in part and denied in part. The motion for summary judgment is granted as to the First Amendment retaliation claims against Defendant Beaumont arising from Plaintiff's filing of grievances, complaints, and/or lawsuits and denied as to the First Amendment retaliation claim against Defendant Main arising from Plaintiff's filing of grievances, complaints, and/or lawsuits. The Court also denies Plaintiff's motion for reconsideration, and his request to have Mr. Landesman removed as counsel. An appropriate Order follows.

Madeline Cox Arleo, District Judge
United States District Court

DATED: 0U31-14

15